IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>TERRY L. CHRISTIANSON,<br><br>　　　　　Defendant. | **4:22CR3129**<br><br>**FINDINGS, RECOMMENDATION,<br>AND ORDER** |

Defendant has moved to suppress evidence obtained as a result of a traffic stop of his vehicle on March 27, 2022. (Filing No. 27). Defendant argues his vehicle was illegally stopped, and his detention was unreasonably prolonged in violation of the Fourth Amendment. (Filing No. 52, at 5:23-6:14). For the reasons discussed below, the motion to suppress should be denied.

## FINDINGS OF FACT

After listening to the testifying witnesses and reviewing the evidence, the undersigned magistrate judge finds the following facts are true for the purposes of determining the merits of Defendant's motion to suppress.

At approximately 10:00 p.m. on March 27, 2022, while driving eastbound on West Cornhusker Street in Lincoln, Nebraska, Lincoln Police Officer Kevin Sladek saw Defendant's 1998 Dodge Ram pickup traveling westbound with auxiliary lights,[1] but not headlights, illuminated. The auxiliary lights were installed

---

[1] The auxiliary lights were also referred to as fog lights or running lights by the testifying officers.

in the front bumper in approximately January 2021 and had an illumination capability that met or exceeded the legal requirements for headlights.

Sladek believed Defendant Terry Christianson was driving the vehicle toward his residence, and that Christianson was committing a traffic violation by operating a vehicle after sunset without illuminated headlights.

Based on prior reports and investigations conducted by other Lincoln Police Department (LPD) officers, Sladek also suspected Defendant was a drug trafficker. Dating back to 2020, LPD officers had observed short-term traffic at Defendant's residence and received information indicating Defendant was involved in methamphetamine trafficking and possession of firearms. Reports received in February and March of 2022, and LPD's own investigation, identified Defendant as a large-scale drug trafficker who possessed firearms. In February 2022, LPD officers attempted to stop a vehicle after the occupant briefly contacted Defendant in an apparent attempt to purchase illegal narcotics. But the vehicle fled, and when LPD officers contacted the driver several days later, the driver explained that he believed "the feds" were following him. LPD conducted additional surveillance of Defendant's residence that month and observed short-term traffic indicative of narcotics trafficking activity.

Sladek followed Defendant's vehicle into the parking lot of the abandoned hotel where Defendant resided. But he did not conduct a traffic stop at that time. Later, while driving northbound at 10:24 p.m., Sladek saw Defendant's pickup approaching southbound and traveling away from Defendant's residence. It was again traveling without illuminated headlights. Sladek noted that consistent with the short-term traffic indicative of drug trafficking, Defendant must have remained at his home only briefly before again departing.

Sladek decided to initiate a traffic stop, but he was unable to do so from his location on the roadway. So, he contacted LPD officer Brian Gruber, advising Gruber that Defendant's vehicle was traveling with its running (auxiliary) lights, but not headlights, illuminated. At that time, LPD Officer Ryan Kraenow was a passenger in Gruber's patrol vehicle.

When Defendant's vehicle pulled into a gas station parking lot, Gruber followed and initiated a traffic stop for driving without illuminated headlights. Based on Defendant's background and recent reports received by LPD, Gruber and Kraenow suspected the driver of that vehicle, Defendant, was involved in drug trafficking and possession of firearms. Gruber approached the driver's side of the vehicle; Kraenow went to passenger side. Shortly thereafter, Sladek arrived at the scene and joined Gruber on the driver's side of the pickup.

Gruber told Defendant that his vehicle was stopped because he was driving without his headlights on. Defendant responded, "Oh. Shit, I'm sorry," and turned on his headlights. Gruber knew Defendant was possibly armed and directed Defendant to exit the pickup. Defendant complied. Kraenow then joined Gruber and Sladek at the driver's side of the pickup.

When asked if he had any weapons. Defendant stated he had a knife and began reaching toward his waistband. The officers forcefully stopped Defendant's movements, concerned he may brandish the knife or use it as a weapon. The officers conducted a pat down search of Defendant's person and found a knife with over a five-inch blade tucked under Defendant's shirt. The knife was removed, and Defendant was seated in Gruber's patrol vehicle.

Gruber began the the process of completing a traffic citation (e.g., reviewing the driver's license, the registration and insurance for the vehicle, and

3

obtaining a criminal history search). As he was doing so, Sladek went to the passenger side of the pickup and used a flashlight to peer into the pickup from the passenger side window. With the driver's seat now vacant, Sladek was able to see the handle of a Colt Python revolver tucked within the interior pocket of the driver's side door. Sladek knew Defendant was a convicted felon. Gruber was still completing the citation when he was notified by Sladek that a firearm was located in the pickup. Defendant was then arrested as a felon in possession of a firearm, and he was handcuffed.

The pickup was searched, and the officers recovered the firearm from the driver's side door. It was loaded. The officers also found illegal drugs in the pickup.

## ANALYSIS

Defendant seeks to suppress the evidence found in his pickup, arguing his vehicle was unlawfully stopped and after the stop, he was unlawfully detained. The government argues "there was probable cause or reasonable suspicion to stop Christianson's vehicle either because Christianson was driving without his headlights on or because of intelligence related to Christianson's drug trafficking and firearms related activities." ([Filing No. 32, at CM/ECF p. 1](#)). The government further argues that Defendant was arrested on felony charges before Officer Gruber could reasonably complete the routine tasks necessary for issuing a traffic ticket, and therefore Defendant's detention was not unreasonably prolonged.

    A. Vehicle Stop

        1) Traffic violation

"[A]ny traffic violation, no matter how minor, is sufficient to provide an officer with probable cause" to stop a vehicle. United States v. Gonzalez-Carmona, 35 F.4th 636, 640 (8th Cir. 2022). The government argues the defendant's failure to turn on his vehicle's headlights violated Nebraska law. Citing the Lincoln Municipal Code, Defendant claims he did not commit a traffic violation because the pickup's auxiliary lights, which provided the lawfully required level of illumination, were on.

> Under Nebraska law:
>
> Every motor vehicle upon a highway within this state during the period from sunset to sunrise and at any other time when there is not sufficient light to render clearly discernible persons or vehicles upon the highway at a distance of five hundred feet ahead shall be equipped with lighted headlights and taillights as respectively required in this section for different classes of vehicles.

Neb. Rev. Stat. § 60-6,219 (emphasis added). Likewise, the Lincoln Municipal Code requires motor vehicles to be equipped with lighted "headlamps," (L.M.C. § 10.22.050), that must be used "during the period from a half hour after sunset to a half hour before sunrise, and at any other time when there is not sufficient light to render clearly discernible persons or vehicles upon the highway at a distance of 500 feet ahead." L.M.C. § 10.22.030. Both the Nebraska statutes and the Lincoln Municipal Code permit installation of auxiliary lights, (see Neb. Rev. Stat. § 60-6,225(2) and L.M.C. § 10.22.040), but "headlights" and "auxiliary lights" are separately used terms in these codifications. They are not synonyms, and there is nothing in either the state statutes or Lincoln's municipal code indicating auxiliary lights are a legally permissible alternative to using headlights. In fact, when facing oncoming traffic at night (e.g., while approaching Sladek's oncoming vehicle at both 10:00 p.m. and at 10:24 p.m.), Defendant was required to dim his

5

headlights and his auxiliary lights were required to be off. Neb. Rev. Stat. § 60-6,225(2).

So, even if Defendant's aftermarket auxiliary lights provided illumination power equal to headlights, the Nebraska statutes and Lincoln municipal law required Defendant to use lighted headlights when driving in the dark on March 27, 2022. Defendant's use of auxiliary lights rather than headlights violated the law, providing sufficient probable cause to lawfully stop Defendant's vehicle. State v. Dallmann, 260 Neb. 937, 949, 621 N.W.2d 86, 97 (2000) (holding driving at night without illuminated headlights is a violation of Nebraska law and justifies conducting a traffic stop).

2) Investigative stop

A police officer may lawfully conduct a brief, investigatory stop of a motor vehicle when the officer has a reasonable, articulable suspicion that the vehicle occupants are involved in criminal activity. United States v. Collins, 883 F.3d 1029, 1031–32 (8th Cir. 2018). Here, based on both long-standing and recent reports provided to LPD, the officers' extended and recent surveillance of short-term traffic at Defendant's residence, and the flight to avoid arrest by a person immediately after he briefly met with Defendant, the LPD officers had ample reason to believe Defendant was engaged in drug trafficking. And on March 27, 2022, he was seen heading to his home at 10:00 p.m. and then traveling away from his home less than a half hour later. While short stops at home may have an innocent explanation, that explanation must be considered in the context of all the facts. Here, the officers noticed: 1) a man with a history of drug and firearms convictions, 2) who informants reported was engaged in drug trafficking, 3) with such reports supported by recent law enforcement surveillance of short-term traffic to and from Defendant's home, 4) driving the streets of a higher drug crime

6

area of Lincoln at 10:00 p.m. on a Sunday night, and 5) then stopping only briefly at his home before departing again. These facts, considered in the totality, provided reasonable suspicion that at the time of the traffic stop, Defendant was engaged in buying or distributing illegal drugs. Stopping Defendant's vehicle to investigate that suspicion did not violate the Fourth Amendment. See, e.g., Id; United States v. Spotts, 275 F.3d 714, 719 (8th Cir. 2002).

    B. Detention

Defendant was directed to exit the vehicle. After a vehicle has been lawfully detained due to a traffic violation, officers "may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Arizona v. Johnson, 555 U.S. 323, 331 (2009) (quoting Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977)). And once the driver is outside the stopped vehicle, he may be lawfully "patted down for weapons if the officer reasonably concludes that the driver might be armed and presently dangerous." Id. (quoting Mimms, 434 U.S. at 112). Here, LPD had received reports that Defendant possessed firearms, and at the time of the stop, Defendant admitted to having a concealed knife and was reaching toward it until the officers stopped him. Under such circumstances, the officers had ample reason to believe Defendant could be armed and dangerous. Pat searching Defendant for weapons did not violate the Fourth Amendment.

Defendant was detained while Gruber began completing a citation. A lawful traffic stop can become unlawful if the vehicle occupants are are detained beyond the time reasonably required to complete the purpose of the stop. United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008). When a vehicle is stopped for a traffic infraction, the occupants may be lawfully detained while the officer completes the routine tasks related to the traffic violation, including

checking the driver's license, the vehicle occupants' criminal history, and the vehicle's registration and insurance, preparing the traffic citation, and asking the occupants general questions about the origin, purpose and destination of their trip. United States v. Murillo-Salgado, 854 F.3d 407, 415 (8th Cir. 2017). In addition, when officers reasonably suspect criminal activity, vehicle occupants can be detained for a reasonable length of time while the officers attempt to either confirm or dispel their suspicion. Saunders v. Thies, 38 F.4th 701, 712 (8th Cir. 2022).

Here, the video evidence confirms that Gruber did not delay the process of completing a traffic citation. More importantly, shortly after Gruber began gathering information to complete the citation, a revolver was found in Defendant's pickup, and Defendant was arrested for being a felon in possession of a firearm. Defendant's detention prior to arrest did not violate the Fourth Amendment.[2]

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant, (Filing No. 27), be denied.

---

[2] Defendant does not specifically claim that the officers lacked probable cause to arrest him or search his vehicle. His challenges are limited to claims that the traffic stop and his detention following that stop violated the Fourth Amendment, and therefore his arrest and the evidence found during the vehicle search must be suppressed as fruit of the illegal stop and detention. Nonetheless, for the sake of completeness, the court finds that after seeing the revolver in the pickup, the officers had probable cause to arrest Defendant, a convicted felon, on a charge of felon in possession of a firearm, and they could lawfully perform a warrantless search of the vehicle pursuant to the automobile exception to the warrant requirement. See United States v. Soderman, 983 F.3d 369, 375 (8th Cir. 2020) (permitting warrantless search of a vehicle where officers reasonably believed it contained evidence of criminal activity).

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that a telephonic conference with counsel will be held before the undersigned magistrate judge at 9:30 a.m. on July 21, 2023, to discuss setting a change of plea hearing or a trial and the related expert witness disclosure deadlines. Counsel for all parties shall use the conferencing instructions provided by the court to participate in the call.

Dated this 28th day of June, 2023.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge